UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| ROGER D. COTTRELL and TERESA M. COTTRELL, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) CASE NO: 2:17CV12 HEA ) |
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) |

# OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment [Doc. 21]. Plaintiffs oppose the Motion [Doc. 29].

## Facts and Background

This action arises from an automobile accident. Plaintiffs' claim arises out of a motor vehicle accident that occurred on October 9, 2014. Plaintiff Roger D. Cottrell was traveling north on U.S. Highway 61, a four-lane divided highway at its intersection with County Route OO. Mason Baumgarte was in a pickup truck on an access road on the east side of Highway 61 at a stop sign. Across from Baumgarte was a brown car at a yield sign in the median on Highway 61. The parties have not been able to identify the driver of the brown car present at the intersection prior to the accident.

Before Baumgarte pulled out onto the highway in his attempt to cross it, he saw Roger Cottrell's vehicle on Highway 61 headed northbound toward him in the right-hand lane. Baumgarte estimated Cottrell's vehicle was approximately ten car lengths away from the intersection when he first saw it and he estimated that it might be traveling approximately five or ten miles an hour faster than the 65 miles-per-hour speed limit.

Then the driver of the brown vehicle (the unidentified, uninsured motorist at issue) waved Baumgarte across the intersection. Baumgarte again checked oncoming traffic and started to proceed across the highway. Baumgarte testified that the brown vehicle pulled out onto the highway. The driver of the brown car pulled out into the northbound passing, left-hand lane and proceeded north on Highway 61. Independent witness Sylvia Elliott testified that the brown car pulled out in front of the Baumgarte truck and the brown car was blocking both of the northbound lanes before leaving the scene at a high rate of speed.

Roger Cottrell's vehicle then collided with Mason Baumgarte's vehicle. According to Roger Cottrell's deposition testimony, he was close enough to Mason Baumgarte when Baumgarte pulled out in front of him that he made eye contact with Baumgarte before Baumgarte pulled out onto Highway 61. Mr. Cottrell was "very" surprised when Baumgarte pulled out. Mr. Cottrell did not see any other vehicle pull into the roadway at the intersection of Highway 61 and Route OO.

But, both parties admitted that the brown car did pull out onto the roadway blocking the path of the Mason Baumgarte black truck.

On October 10, 2014, Plaintiffs notified American Family of the wreck. Attorney Templeton sent American Family a demand letter on July 30, 2015.

On October 10, 2014, American Family Casualty Claims Adjuster Jeannine Bono ordered a copy of the police report, which she obtained later that month. The police report contains a statement from Roger Cottrell: "I was going north on U.S. 61. He pulled right in front of me. I couldn't hit the brakes or nothing." The police report contains a statement from Mason Baumgarte: "I was stopped at U.S. 61. There was a brown car on the other side and trying to turn left onto U.S. 61. He waved me over. I started coming over and the guy pulled in front of me and headed north on 61. I had to stop in the roadway and this car hit my side." The police report contains a statement from witness Sylvia Louise Rousan-Elliott: "There was a brown car in the crossover. The truck was at the side street and started to come across. The brown car made a quick left in front of [the] truck. The truck stopped and the Ford car ran into it."

On October 15, 2014, Bono obtained a recorded statement from Roger Cottrell. During his recorded statement Mr. Cottrell stated he was traveling in the "right slow lane" north on Highway 61 at 65 miles per hour. Mr. Cottrell described the accident as "I came up on the intersection, I got about maybe fifteen,

twenty feet from the intersection. I can clearly see this young man looking at me. He pulls directly out into my path, I T-boned him directly." When asked if he did anything to avoid the accident, "slam on your brakes, swerve, do anything like that" Mr. Cottrell responded "There was no time." Mr. Cottrell stated "there was no other cars at that intersection that I could tell." Mr. Cottrell added that Mr. Baumgarte pulled out in front of him "like he was trying to beat a train or something, he was looking right at me." Mr. Cottrell also stated "I just cannot believe that that state patrolman did not ticket this boy for failure to yield."

On October 28, 2014, Ms. Bono documented that she left voicemails for Mason Baumgarte and witness Sylvia Rousan-Elliott. Ms. Rousan-Elliott stated she was never contacted by American Family.

On October 29, 2014, Allied Insurance (Mason Baumgarte's insurance company) left a voicemail for Ms. Bono indicating Allied assessed 100% liability for the accident against Mason Baumgarte. American Family closed its file at that point in time.

On July 30, 2015, Scott Templeton, counsel for Roger and Teresa Cottrell, sent a non-time limit demand letter for uninsured motorist coverage for Roger Cottrell's injuries sustained in the accident, which American Family received on August 3, 2015. Mr. Templeton's correspondence reiterated Mr. Baumgarte's statement in the police report and indicated Mr. Templeton had contacted Ms.

4

Rousan-Elliott, who "corroborated what Mr. Baumgarte said with regard to the brown vehicle's actions in connection with this accident." American Family re-opened its claim, acknowledged the demand, and referred the injury portion of the assessment to Injury Claims Adjuster Laura Burris.

Bono and Rachel Manning, her supervisor, assessed the claim and denied liability on September 3, 2015, due to having determined that Baumgarte was at fault in causing the accident.

On February 16, 2016, American Family received a ten-day time limit demand reasserting the uninsured motorist claim for Roger Cottrell's injuries. Bono and Manning again assessed the claim and denied liability on February 18, 2016, again due to Baumgarte's fault in causing the accident.

Plaintiffs Roger D. Cottrell and Teresa M. Cottrell had seven automobile policies issued by defendant American Family Mutual Insurance Company. Each policy provided uninsured motorist coverage in the amount of $100,000.00 per person and $300,000.00 per accident. In each policy the defendant American Family Mutual Insurance Company agreed to "pay compensatory damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle. In each policy the coverage included coverage for "a hit-and-run vehicle whose operator or owner is unknown and which causes bodily injury to an insured person." In each, policy coverage was

provided where there was no contact between the hit-and-run vehicle and the vehicle in which the insured was injured.

The brown car at the scene of the October 9, 2014 wreck, which is the subject of this case, was operated by an unknown person who left the scene; the owner of the vehicle is unknown; and the brown car is an uninsured motor vehicle within the meaning of the policies.

Mason Baumgarte stopped on the east side of US Highway 61 intending to yield to oncoming traffic. Mason Baumgarte was waiting on the driver of the brown car to do something when the driver of the brown car waved Mason Baumgarte to go ahead of him.

After Mason Baumgarte entered the intersection, the driver of the brown car pulled out turning left in front of Mason Baumgarte and cut off Mason Baumgarte.

The brown car accelerated quickly in front of Mason Baumgarte and came to a stop diagonally in the northbound passing lane.

Sylvia Rousan-Elliott was an independent third-party witness to this wreck. She testified that "it [the brown car] led to the collision."

The driver of the brown car waved Mason Baumgarte's truck across the road. Then "the brown car fastly went out in front of him [Mason Baumgarte] making him having to stop in the middle of the northbound 61 lane."

After the brown car waved him across the street, Mason Baumgarte had to stop in a lane reserved for traffic moving 65 miles per hour because the brown car had turned left in front of him.

Jeannine Bono was initially assigned by American Family on October 10, 2014, to adjust the claim from the wreck. When Bono was assigned she was not investigating an uninsured motorist claim. Bono closed her file at the end of October of 2014 after Baumgarte's insurance company agreed to pay for the property damage.

Scott Templeton's July 30, 2015 demand was the first notice of an uninsured motorist claim. After Scott Templeton's July 30, 2015 demand, the uninsured motorist case was assigned to Bono. Bono did no further investigation concerning the fault of the brown car. After the uninsured motor vehicle case was assigned to her, Bono did not try to contact any of the witnesses or the highway patrolman. Bono did not do anything to try to determine the involvement of the brown car. Bono did not do any further fact investigation before denying the claim on September 3, 2015.

Scott Templeton renewed the uninsured motor vehicle claim by letter dated February 16, 2016. In his February 16, 2016, letter Templeton enclosed a copy of a Petition he was prepared to file. The Petition enclosed with Templeton's

February 16, 2016, letter described in detail the conduct of the brown car upon which the uninsured motor vehicle claim was based.

After receiving the February 16, 2016 Templeton letter and attached Petition, Bono did not try to contact any witnesses or the highway patrolman to investigate the claim. After receiving the February 16, 2016, Templeton demand Bono denied the claim for uninsured motor vehicle insurance within one day and without any investigation.

Bono knew American Family had a statutory duty to investigate the claim. If Bono had investigated the claim she would have learned about the brown car's involvement in the wreck.

Laura Burris, who was assigned by American Family to evaluate Roger Cottrell's injuries, closed her file without completing the evaluation. No one with American Family ever completed the evaluation of the bodily injury suffered by Roger Cottrell in this wreck.

The American Family Corporate Representative testified that she sought an opinion of in house counsel "on the wave out situation." A written opinion of in house counsel was received by American Family.

American Family knew of the Statutory duties under the Missouri Improper Claims Practices Act found at Section 375.1007 RSMo. American Family knew of

the Regulatory duties under the Missouri Improper Claims Practices Act found at Section 20 CSR 100-1.050.

The wreck was a violent T-bone collision which destroyed both cars. Roger Cottrell had a head injury, lost consciousness, and had a loss of memory.

## Standard of Review

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex,* 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some

alleged factual dispute." Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. *Anderson,* 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson,* 477 U.S. at 255. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Id.* at 249.

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion, and must identify 'those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact.' " *Torgerson v. City of*

*Rochester*, 643 F.3d 1031, 1042, (8th Cir. 2011) (en banc) (quoting *Celotex*, 477 U.S. at 323). If the movant does so, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Celotex*, 477 U.S. at 324). In order to survive a motion for summary judgment, "the nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [her] favor based on more than mere speculation, conjecture, or fantasy.'" *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 801 (8th Cir. 2011) (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 733–34 (8th Cir. 2003)) (internal quotation marks omitted).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If "reasonable minds could differ as to the import of the evidence," summary judgment should not be granted. *Anderson*, 477 U.S. at 251.

## Discussion

Under Missouri law, the right of an injured party to recover from an uninsured motorist carrier arises from the insurance contract, rather than in tort. But, the determination of whether the uninsured motorist carrier will be obligated

to pay money damages to the insured depends on whether the alleged uninsured motorist is liable in tort to the injured party. *Oates v. Safeco Ins. Co. of America,* 583 S.W.2d 713, 715 (Mo.1979).

In order to establish that the unknown motorist is "legally liable to the insured," Plaintiff must prove that the unknown motorist had a duty to protect him from injury, that the unknown motorist breached that duty, and that the unknown motorist's breach was the proximate cause of Plaintiff's injuries. *Silva v. Const. & Abatement Serv., Inc.,* 238 S.W.3d 679, 681 (Mo.Ct.App.2007). To establish causation, a plaintiff must demonstrate that a defendant's conduct was both the cause-in-fact and the proximate, or legal, cause of the injury. *Wright v. Barr,* 62 S.W.3d 509, 524 (Mo.Ct.App.2001). Proximate cause is a question of law for the trial court. *Townsend v. Eastern Chemical Waste Systems,* 234 S.W.3d 452, 466 (Mo.Ct.App.2007).

After review of the cited Missouri authorities, the Court finds that the Missouri Supreme Court's decision in *Horton v. Swift* controls. 415 S.W.2d 801 (1967). The rule adopted in *Horton* maintains that

> Where a second actor has or should have become aware of the existence of a potential danger created by the negligence of an original tort-feasor, and thereafter, by an independent act of negligence, brings about an accident, the first tort-feasor is relieved of liability, because the condition created by him was merely a circumstance of the accident and not its proximate cause.

*Id.* at 803. See also, *Pettiford v. Sousley*, No. 07-0014CV-W-DW, 2008 WL 3200755, at *1–3 (W.D. Mo. Aug. 5, 2008).

In *Horton,* the Missouri Supreme Court found that a beckoning gesture by taxicab driver was not the proximate cause of injuries suffered by the plaintiff when she crossed a roadway, opened the cab door in traffic and was subsequently injured when a truck struck her hand. Instead, Plaintiff's injury was caused by her act in opening the door so close to the truck and the movement of the truck at that time.

Here, like *Horton,* the unknown motorist's gesture to Baumgarte to enter the roadway was not the proximate cause of the accident, but instead the accident was caused by Baumgarte's subsequent act of entering the intersection in which Plaintiff Roger Cottrell was traveling so closely to Baumgarte that he was unable to avoid the inevitable collision.

Since Defendant had no duty to pay Plaintiff's claims, its actions were not without reasonable cause or excuse and therefore, its actions are *a fortiori* not vexatious.

**Conclusion**

Based upon the foregoing analysis, there are no genuine disputes as to any material fact and based on those undisputed facts, Defendant is entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Doc. 21] is **GRANTED**.

A separate judgment in accordance with this Opinion, Memorandum and Order will be entered this same date.

Dated this 21st day of November, 2017.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE